## EQUITABLE MORTG. CO. v. CRAFT.

### (Circuit Court, N. D. Georgia. November 23, 1893.)

### No. 451.

USURY—COMMISSIONS TO INTERMEDIARY—EVIDENCE OF AGENCY.

The fact that a trust and banking company engaged in the business of securing loans for its customers in one instance advances money to a borrower before submitting his application and real-estate securities to the mortgage company in whose favor they are drawn, coupled with the fact that the bonds to reconvey are signed by the president of the trust company, as attorney in fact for the mortgage company, are not sufficient to justify the court in inferring, in the face of direct testimony to the contrary, that the trust company was an agent of the mortgage company, so that the payment of a commission to the former would be a payment to the latter, rendering the rate of interest usurious. Merek v. American, etc., Co., 7 S. E. 265, 79 Ga. 213, followed.

In Equity. Bill by the Equitable Mortgage Company against Clayton Craft. Heard on exceptions to the master's report. Exceptions sustained, and decree for complainant.

Statement by NEWMAN, District Judge:

On July 26, 1889, Clayton Craft, the defendant in this case, made a written application to the Atlanta Trust & Banking Company for a loan of $2,400 for five years at 6 per cent. per annum, the application being made to them for the purpose of inducing said trust company to undertake to procure the money from some source for Craft. Accompanying said application was a written agreement, signed by Craft, and addressed to the Atlanta Trust & Banking Company, in which Craft made said banking and trust company his agent to procure the five-year loan of $2,400 at 6 per cent. per annum, and agreed to pay said trust and banking company $480 as commissions for procuring the loan, the same being 20 per cent. of the amount of the loan.

On October 23, 1889, Craft executed a mortgage deed to certain lands to secure a note for $2,580, payable to the Equitable Mortgage Company. The reason the face of the loan was $2,580 was because the Equitable Mortgage Company would not loan their money for less than 8 per cent., and, Craft agreeing to pay 8 per cent., and the loan, which called for $2,580 at 6 per cent., would be about equal to $2,400 at 8 per cent., for five years, this being the period said loan was to run. The evidence is undisputed that the Equitable Mortgage Company received no more than 8 per cent. interest, which is the legal rate of interest in Georgia. Nor did the evidence show that the Equitable Mortgage Company shared in any commissions charged by the Atlanta Trust & Banking Company. The Atlanta Trust & Banking Company was chartered to do a general banking business, and to negotiate loans; and their method of doing business was to get up applications which contained a description of the property intended as security, have an inspection of the same made from their office, and with this have an abstract of title, which application, abstract, and examiner's report were submitted to the loan company or individuals who desired such a loan. The blank bonds, coupon notes, applications for loans, and all necessary papers were furnished by the Atlanta Trust & Banking Company. The Atlanta Trust & Banking Company negotiated these loans not only with the Equitable Mortgage Company, but with several other companies and individuals, both in America and Europe.

In this particular instance, Craft's papers were written up for the Equitable Mortgage Company before the papers had been submitted to them, and the money was furnished temporarily to Craft by the Atlanta Trust & Banking Company with his knowledge, in order to expedite the loan. The papers were then sent on to the Equitable Mortgage Company, and it accepted the papers, and returned to the Atlanta Trust & Banking Company the amount of money advanced by it to Craft. The Equitable Mortgage Company had the privilege of rejecting these papers if they were not satisfied, and in many instances did reject papers so prepared and sent on by the Atlanta Trust & Banking Company. W. A. Hemphill, under a power of attorney from the Equitable Mortgage Company, (whom the evidence showed to be the president of the Atlanta Trust & Banking Company,) executed in the name of the Equitable Mortgage Company a bond to reconvey the property on the payment of the debt.

This case was referred to special master to hear and determine and report back to this court. The special master, in his report, found for the defendant, and the case is now before the court on the exceptions of complainant to said report of the master.

Payne & Tye, for complainant.
Geo. Dudley Thomas and Erwin & Cobb, for defendant.

NEWMAN, District Judge, (after stating the facts.) Having become satisfied that the contract in this case is not usurious, it is unnecessary to consider the other exceptions to the report of the master, and other questions discussed in this case. The fact that the money was advanced to the defendant by the Atlanta Trust & Banking Company before the papers were received by the Equitable Mortgage Company, and the fact that the bonds to reconvey were signed by W. A. Hemphill, as attorney in fact for the Equitable Mortgage Company, is not sufficient, in my opinion, to justify the court in determining that the Atlanta Trust & Banking Company was the agent of the Equitable Mortgage Company. The fact that Hemphill was the president of the Atlanta Trust & Banking Company, it seems to me, ought not to affect the question, said trust and banking company being engaged in negotiating loans through complainant and others; and, it being desirable, in order to facilitate

the transaction of the business, that there should be some one to execute such papers, it is entirely natural that he should be selected, and the court would not from that imply an agency in the trust and banking company, in the face of express testimony to the contrary. The fact of the advance of the money to Craft, the defendant, by the Atlanta Trust & Banking Company, before the loan was finally accepted by the Equitable Mortgage Company, is shown to have been to expedite the transaction of the business of negotiating loans, and the Equitable Mortgage Company had the right to accept or reject it thereafter. If the trust and banking company saw proper to thus advance the money to the defendant on paper executed by him to the Equitable Mortgage Company, taking their chances on its acceptance by the latter, it is not a matter that the defendant should be allowed to set up as a ground for claiming the contract to be usurious. It is not claimed that the Equitable Mortgage Company received more than legal interest. The only contention is that the facts in evidence make the Atlanta Trust & Banking Company its agent, and therefore the commissions received by said trust and banking company were, in law, received by the Equitable Mortgage Company. The court is not prepared to so hold.

In the case of Merck v. American, etc., Co., 79 Ga. 213, 7 S. E. 265, the supreme court of Georgia, in a case very much like this, construed the statutes of Georgia on the subject of usury, and the reasoning there covers the facts in this case. It is claimed by counsel for the defendant that in the two matters which have been referred to above—the president of the Atlanta Trust & Banking Company acting as attorney in fact for complainant, and the advance of the money before the acceptance of the loan by complainant—distinguishes this case from the Merck Case. I do not think so. The Atlanta Trust & Banking Company seems to have been doing an independent business in Atlanta in banking and in negotiating loans, and would, of course, adopt such methods of transacting its business as to facilitate the same; and that was all these two matters amounted to. It is insufficient, as has been stated, to raise the implication of agency in the face of direct testimony to the contrary. In the case of Trust Co. v. Fowler, 141 U. S. 384, 12 Sup. Ct. 1, the agency was express. The person negotiating the loan had been expressly made the agent of the lender in the state where the loan was made. Consequently the facts in that case differ materially from the facts in this case, and there was nothing in that case inconsistent with the views above expressed by the court that the transaction at bar is not usurious.

The conclusion is that the contract is not usurious, and that the special master erred in so finding. Complainant's exception on that ground will be sustained, and a decree rendered in favor of the complainant for the full amount of its debt, with interest thereon.